UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KENNETH S.,

                              Plaintiff,

v.                                                      3:17-cv-01316
                                                        (TWD)
COMM'R OF SOC. SEC.,

                              Defendant.

_____

APPEARANCES:                              OF COUNSEL:

LACHMAN & GORTON                          PETER A. GORTON, ESQ.
Attorney for Plaintiff
1500 E. Main Street
P.O. Box 8
Endicott, New York 13761-0089

GRANT C. JAQUITH                          GRAHAM MORRISON, ESQ.
U.S. Attorney for the                     Special Assistant U.S. Attorney
Northern District of New York
Attorney for Defendant
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                 STEPHEN P. CONTE, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>MEMORANDUM-DECISION AND ORDER</u>

Plaintiff Kenneth S. brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision by the Commissioner of Social Security ("Commissioner" or

"Defendant") denying his application for disability insurance benefits.  (Dkt. No. 1.)  The parties

consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  (Dkt. Nos. 5, 7.)  Both parties have filed briefs.  (Dkt. Nos. 13, 16.)  Oral argument was not heard.  For the reasons discussed below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on July 5, 1968.  (Administrative Transcript at 77.[1])  He completed high school in 1986 and previously worked as a forklift operator, automotive mechanic, and material loader.  (T. 77, 76, 79, 247.)  At the initial application level, Plaintiff alleged disability due to arthritis, fluid retention, bulge/herniated discs, dry hip sockets (need hip replacement), diabetes, heart disease, high blood pressure, misalignment of the spine, extreme vision impairment (100% loss of vision in right eye), and memory loss/disorientation.  (T. 246.) Plaintiff also alleges disability due to degenerative joint disease in his lower lumbar spine, Type II diabetes with neuropathy bilaterally in his feet, coronary heart disease status-post bypass, right eye blindness, and obstructive sleep apnea.  (T. 12-13, 295.)  He stopped working in 2013 due to his conditions.  (T. 82.)

On March 17, 2014, Plaintiff filed an application for disability benefits, alleging an onset date of May 22, 2013.  (T. 224-25.)  Plaintiff's application was initially denied on July 8, 2014. (126-129.)  Thereafter, Plaintiff filed a written request for a hearing, which was held on March

---

[1]  The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

11, 2016, by Administrative Law Judge ("ALJ") Bruce S. Fein. (T. 72-108, 132.) During the hearing, Plaintiff amended his alleged onset date to November 1, 2013. (T. 90.) On October 27, 2016, the ALJ issued a written deicison finding Plaintiff was not disabled under the Social Security Act. (T. 10-28.) On October 23, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3, 226.) Plaintiff commenced this action on December 6, 2017. (Dkt. No. 1.)

## II. RELEVANT LEGAL STANDARD

### A. Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

---

[2] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). A reviewing

court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative

record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. (T. 10-28.) In his October 27, 2016, decision, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018. (T. 12.) He found Plaintiff had not engaged in substantial gainful activity since November 1, 2013, the amended alleged onset date. *Id.* The ALJ determined Plaintiff has the following severe impairments: coronary artery disease status-post coronary artery bypass grafting, diabetes, degenerative joint disease of the lumbar spine, mild neurocognitive disorder, and obesity. *Id.* The ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (T. 14.) He found Plaintiff has the residual functional capacity ("RFC"):

> to lift and/or carry 10 pounds; sit for a total of six hours in an eight-hour workday with normal breaks; stand and/or walk for a total of two hours in an eight-hour workday with normal breaks; occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; and never climb ladders or scaffolds. [Plaintiff] retains the ability to perform unskilled work that is limited to simple, routine, and repetitive tasks.

(T. 17.) The ALJ determined Plaintiff was unable to perform any past work; was defined as a younger individual age 45-49 on the amended alleged disability onset date; had at least a high school education; and was able to communicate in English. (T. 26.) At step five, considering Plaintiff's age, education, work experience, and residual functional capacity, together with the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpart P, Appendix 2 (the "Grids"), the ALJ concluded Plaintiff's postural and mental restrictions would have little or no effect on his

occupation base of unskilled sedentary work and, therefore, found Plaintiff "not disabled" under the framework of Medical-Vocational Rule 201.21. (T. 26-28.) Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from November 1, 2013, through the October 27, 2016. (T. 28.)

## IV. THE PARTIES' CONTENTIONS

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ: (1) fails to properly assess Plaintiff's physical limitations to time off task; (2) improperly substitutes his lay opinion; (3) violates the treating physician rule; (4) does not properly assess Plaintiff's sitting limitations; and (5) does not properly account for Plaintiff's mental impairments. (Dkt. No. 13 at 10-18.) Plaintiff further argues the ALJ's step five determination is not supported by substantial evidence. *Id*. at 18. In response, the Commissioner contends the ALJ's decision applied the correct legal standards and is supported by substantial evidence. (Dkt. No. 16 at 4-11.)

## V. THE OPINION EVIDENCE

### A. Mary Ann Moore, Psy.D.

On June 25, 2014, Dr. Moore performed a consultative psychiatric evaluation. (T. 419-424.) Plaintiff drove to the evaluation. (T. 419.) Plaintiff reported having coronary artery disease, vision issues, diabetes, chronic back and hip pain, and an eye injury. *Id*. Plaintiff has never been prescribed medication for psychiatric reasons and has never attended outpatient counseling or been psychiatrically hospitalized. *Id*. His chief complaints included waking three to four times per night, some worry, poor memory, being easily distracted, losing attention more easily, difficulties learning new materials, and problems with organization. (T. 420.) For

example, Plaintiff stated that he would start daydreaming while stopped at a red light and "the next thing he knows the light has turned green, and people are honking at him." *Id.*

He reported being able to dress, bathe, and groom himself. (T. 422.) His wife does the laundry, cooking, and shopping. *Id.* Plaintiff will do some light chores, including feeding and sweeping after their six birds. *Id.* His wife manages the money because he would not remember to pay the bills. *Id.* His wife cooks because he gets distracted and "burns stuff." *Id.* Plaintiff reported vison problems after a work injury in 2004. (T. 419, 422.) Plaintiff drives his wife to work, drops his grandson off at school, and watches some television. (T. 422.) He occasionally goes outside. *Id.*

Dr. Moore found Plaintiff was generally cooperative and responsive to questions. (T. 421.) His manner of relating socially was adequate. *Id.* His speech was fluent and clear. *Id.* He was expressive and his receptive language abilities were adequate. *Id.* He was coherent and goal directed. *Id.* There was no evidence of hallucinations, delusion, or paranoia. *Id.* Plaintiff's mood was euthymic, his affect was of full range, and his sensorium was clear. *Id.* He laughed and smiled appropriately. *Id.* He was oriented to person, place, and time. *Id.*

His attention and concentration appeared "mildly impaired possibly due to some cognitive issues." *Id.* He was able to count and do simple calculations. *Id.* Plaintiff did not appear to understand the directions to complete the serial 3s, even though they were explained several times. *Id.* For example, Plaintiff responded, "20, 27, 24, 21, 18, 15, 12, 9, 2, 3, 0." *Id.* He was able to state 3 out of 3 objects immediately and 2 out of 3 objects after a five-minute delay. *Id.* He stated 5 digits forward and 3 digits backward. *Id.* His cognitive functioning was "average to below average" and his general fund of information was appropriate to experience.

*Id.* His insight was fair to good. *Id.* His judgment was fair with possible cognitive issues. *Id.* Dr. Moore noted Plaintiff's memory appeared more impaired for more complex information. *Id.*

Dr. Moore diagnosed Plaintiff with mild neurocognitive disorder (possibly due to blood loss from blockages), coronary artery disease, diabetes, chronic back and hip pain, and vison issues. (T. 423.) His prognosis was fair. *Id.* Dr. Moore opined Plaintiff has no limitations following and understanding simple directions and instructions or performing simple tasks independently; mild limitations appropriately dealing with stress and relating adequately with others; and moderate limitations making appropriate work decisions and maintaining a regular work schedule. *Id.*

### B. Rita Figueroa, M.D.

Plaintiff underwent a consultative medical examination with Dr. Figueroa on June 25, 2014. (T. 429-35.) His chief complaints were: (1) coronary artery disease; (2) chronic low back pain; (3) bilateral hip and knee pain; (4) Type II diabetes; and (5) right eye blindness. (T. 429.) He was prescribed Hydrochlorothiazide, Metformin, Atorvastatin, Carvedilol, Benazepril, Glyburide, and Vitamin D. (T. 430.) He reported bypass surgery in 2011 and a motor vehicle accident in 1987. *Id.*

Plaintiff reported showering and dressing daily, watching television, listening to the radio, and daily childcare. *Id.* He stated it hurt to stand, bend over, and carry bags up and down the stairs. *Id.* He reported his wife does the cleaning, lauding, and shopping because "he can't stand for long periods of time." *Id.* He reported only doing "short trips for essential products." *Id.*

Dr. Figueroa noted Plaintiff appeared to be in no acute distress. (T. 431.) His gait and stance were normal. *Id.* He could walk on his heels and toes without difficulty. *Id.* He could

squat to three-quarters. *Id.* He used no assistive devices and needed no help changing for the examination or getting on and off the examination table. *Id.* He was able to rise from a chair without difficulty. *Id.* Plaintiff's vision corrected with glasses was 20/200 in the right eye, 20/40 in the left eye, and 20/40 with both on a Snellen chart at a distance of twenty feet. *Id.* His right eye pupil did not have red eye reflex and was constricted. *Id.* His left eye was normal. *Id.* His chest and lungs were clear to auscultation and the percussion was normal. *Id.* There was no significant chest wall abnormality. *Id.* He had normal diaphragmatic motion and normal anteroposterior diameter. *Id.* His heart rhythm was regular with no murmur, gallop, or rub audible. *Id.*

On examination, Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (T. 432.) There was no scoliosis, kyphosis, or abnormality in his thoracic spine. *Id.* Plaintiff's lumbar spine showed flexion to 40 degrees, extension to 20 degrees, lateral flexion to 20 degrees bilaterally, and rotation to 20 degrees bilaterally. *Id.* Plaintiff had negative straight leg raising bilaterally. *Id.* He had full range of motion of his shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. *Id.* There was no evident subluxations, contractures, ankylosis, or thickening. *Id.* His joints were stable and nontender. *Id.* There was no redness, heat, swelling, or effusion. *Id.* Plaintiff had decreased deep tendon reflexes in his upper extremities. *Id.* They were normal in his lower extremities. *Id.* Plaintiff's strength was 5/5 in both the upper and lower extremities. *Id.* His hand and finger dexterity were intact. *Id.* His grip strength was 4/5 bilaterally. *Id.* Dr. Figueroa noted June 2014, x-rays showed joint space narrowing in Plaintiff's right hip and degenerative changes in his lumbosacral spine. (T. 432, 434-35.)

Dr. Figueroa diagnosed Plaintiff with (1) coronary artery disease, status post coronary arterial bypass graft, 5 vessels; (2) chronic low back pain; (3) diabetes type 2 with neuropathy; and (4) right eye blindness. (T. 433.) Plaintiff's prognosis was guarded. *Id.* Dr. Figueroa opined Plaintiff has a marked limitation for lifting, carrying, bending, walking, and standing due to chronic low back pain; marked limitation for activities requiring mild to moderate exertion due to his cardiac condition; and marked limitation for activities requiring fine visual activity. *Id.*

**C.     R. Gauthier, M.D.**

In July 2014, Dr. Gauthier, the State Agency medical consultant, opined Plaintiff had no functional deficits from the neuropathy. (T. 118.) Dr. Gauthier indicated Plaintiff's cardiac condition was stable because the evidence of record disclosed no sign of any returning angina and no chronic heart failure. (T. 118, 440-43.)

**D.     R. Nobel, Ph.D.**

In July 2014, the State Agency review psychologist, Dr. Nobel, opined that with regard to Plaintiff's understanding and memory, his ability to remember locations and work-like procedures was not significantly limited; his ability to understand and remember very short and simple instructions was not significantly limited; and his ability to understand and remember detailed instructions was moderately limited. (T. 121.)

In terms of Plaintiff's sustained concentration and persistence limitations, Dr. Nobel opined his ability to carry out very short and simple instructions was not significantly limited; his ability to carry out detailed instruction was moderately limited; his ability to maintain concentration for an extended period was not significantly limited; and his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary

tolerances was not significantly limited.  *Id*.  Dr. Nobel opined Plaintiff was not significantly limited in the ability to sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; and make simple work-related decisions.  (T. 122.)

Lastly, Dr. Nobel opined Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods was not significantly limited.  *Id*.

### E.     Domingo Jimenez, M.D.

On February 16, 2016, Plaintiff's primary care provider, Dr. Jimenez completed a questionnaire.  (T. 504-06.)  Dr. Jimenez indicated he treats Plaintiff for obstructive sleep apnea, diabetes, hypertension, and coronary artery disease.  (T. 504.)  He checked boxes indicating Plaintiff's conditions and/or side effects of medications would cause fatigue, diminished concentration, diminished work pace, and the need to rest at work.  *Id*.  Plaintiff's conditions and/or side effects would not cause pain.  *Id*.  Dr. Jimenez checked a box indicating Plaintiff would be off task more than 15 percent but less than 20 percent during a workday.  *Id*.  He opined Plaintiff's conditions would be expected to produce good days and bad days, and that Plaintiff would be absent one day or less per month.  (T. 505.)  Dr. Jimenez opined Plaintiff can sit for six hours out of an eight-hour day; should change positions every thirty minutes; and can stand/walk for approximately two hours out of an eight-hour day.  *Id*.  He found Plaintiff can frequently lift up to ten pounds and occasionally lift over ten pounds.  *Id*.

### F.     S. Chandrasekhar, M.D.

In June 2016, Dr. Chandrasekhar, an impartial medical expert, submitted answers to medical interrogatories.  (T. 529-38.)  He found Plaintiff has the following impairments: (1)

obesity; (2) status post coronary artery bypass; (3) chronic lacunar infarct basal ganglion, status post cataract surgery right eye; (4) occipital joint effusion; (5) Type II diabetes; (6) narrowing of joint space and degenerative disease of the lumbar spine; and (7) mild neurocognitive disorder. (T. 529.)

Dr. Chandrasekhar opined Plaintiff can continuously lift and carry up to ten pounds; frequently lift and carry eleven to twenty pounds; occasionally lift and carry twenty-one to fifty pounds; and never lift and carry fifty-one or more pounds. (T. 532.) He opined Plaintiff can sit for four hours at one time without interruption, stand three hours at one time without interruption, and walk three hours at one time without interruption. (T. 533.) He further opined Plaintiff can sit for five hours total in an eight-hour workday, stand for four hours total in an eight-hour workday, and walk for four hours total in an eight-hour workday. *Id*. He indicated Plaintiff does not require the use of cane to ambulate. *Id*. He opined Plaintiff can continuously perform reaching, handling, fingering, and feeling. (T. 534.) Plaintiff can occasionally push/pull. *Id*. Plaintiff can frequently operate foot controls with each foot. *Id*. He found Plaintiff can never climb ladders or scaffolds, can occasionally climb stairs and ramps, can occasionally balance, and can frequently stoop, kneel, crouch, and crawl. (T. 535.) Dr. Chandrasekhar noted Plaintiff's vision was 20/200 in the right eye and Plaintiff could "possibly" read very small print. *Id*. He also opined Plaintiff could never tolerate exposure to unprotected heights and could occasionally tolerate exposure to moving mechanical parts and operating a motor vehicle. *Id*.

# VI.  ANALYSIS

## A.  Residual Functional Capacity

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. §
404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained
work activities in an ordinary work setting on a regular and continuing basis.  A regular and
continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."
*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d
45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must
consider a claimant's physical abilities, mental abilities, symptomology, including pain and other
limitations which could interfere with work activities on a regular and continuing basis."  *Id.*
(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by
an individual's response to demands of work . . . must be reflected in the RFC assessment.'"
*Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11,
2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth
with sufficient specificity to enable [the Court] to decide whether the determination is supported
by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both
examining and non-examining State agency medical consultants because these consultants are
qualified experts in the field of social security disability.  *Frey ex rel. A.O. v. Astrue*, 485 F.
App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes
expert opinion evidence which can be given weight if supported by medical evidence in the
record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26,
2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in

14

disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (quotation marks omitted).

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. § 404.1527(c)(1)-(6).

**B.      Challenges to the ALJ's RFC Determination**

As noted above, the ALJ found Plaintiff has the RFC:

> to lift and/or carry 10 pounds; sit for a total of six hours in an eight-hour workday with normal breaks; stand and/or walk for a total of two hours in an eight-hour workday with normal breaks; occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; and never climb ladders or scaffolds. [Plaintiff] retains the ability to perform unskilled work that is limited to simple, routine, and repetitive tasks.

(T. 17.) In reaching this determination, the ALJ afforded the most weight to the opinions rendered by Dr. Chandrasekhar and Dr. Nobel. (T. 23, 24.) He assigned Dr. Gauthier's opinion significant weight. *Id.* The ALJ assigned some weight to the opinions of Dr. Jimenez, Dr. Figueroa, and Dr. Moore. (T. 24, 25.)

Plaintiff contends that in determining the RFC, the ALJ (1) erroneously substituted his own opinion over the undisputed medical opinion of treating physician Dr. Jimenez, who opined Plaintiff would be off task for 15 to 20 percent of the workday; (2) improperly assessed Plaintiff's sitting limitations; and (3) failed to account for Plaintiff's mental limitations. (Dkt. No. 13 at 3, 10-18.)

C.     **Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC**

As an initial matter, the ALJ's decision includes detailed consideration of the medical opinions and related treatment notes, consistent with the requirements of 20 C.F.R. § 404.1527. (T. 10-28.) Further, the ALJ adequately considered the various limitations (and lack thereof) identified in the medical opinions, and sufficiently explained the specific weight he afforded to each opinion. (T. 17-26.) The ALJ was responsible for reviewing all of the medical and other evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, No. 3:13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, No.7:12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014). Thus, in formulating Plaintiff's RFC, the ALJ was not required to accept every limitation in treating physician Dr. Jimenez's opinion nor craft an RFC that

16

mirrored Dr. Chandrasekhar's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."); *Zongos v. Colvin*, No. 5:12-cv-1007 (GLS/ESH), 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion, but not to another portion); *see also Veino v. Barnhart*, 312 F.3d 578, 588-89 (2d Cir. 2002) (ALJ did not err in crediting only a small part of treating physician's report).

### 1. Dr. Jimenez's Opinion—Off Task Limitation

Plaintiff argues the ALJ should have accepted Dr. Jimenez's opinion that Plaintiff would be off task more than 15 percent but less than 20 percent during a regular workday on account of Plaintiff's physical conditions, including obstructive sleep apnea, Type II diabetes, high blood pressure, and coronary artery disease. (Dkt. No. 13 at 10-14.) Plaintiff maintains the ALJ made a factual error in assuming Dr. Jimenez's limitations related to emotional or mental conditions, improperly substituted his lay opinion, and violated the treating physician rule. *Id.* The Court agrees with the Commissioner that the ALJ applied the proper legal standards and there is substantial support in the record for the RFC. (Dkt. No. 16 at 6-9.)

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and is contradicted by other substantial evidence in the record. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a

whole, the less weight it will be given.").

The ALJ assigned Dr. Jimenez's opinion some weight. (T. 24, 504-05.) The ALJ noted this opinion would normally be given controlling weight as long as his assessment was supported by medially acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence the case record. (T. 24.) The ALJ found support for Dr. Jimenez's opinion that Plaintiff can sit for approximately six hours in an eight-hour workday; stand/walk for approximately two hours in an eight-hour workday; frequently lift up to ten pounds; occasionally lift over ten pounds; and would miss one day or less per month from work because of his medical conditions. *Id.* However, the ALJ rejected Dr. Jimenez's determination that Plaintiff needed to alternate between sitting and standing by changing positions every thirty minutes because there was nothing in the treatment notes indicating Plaintiff ever complained of being unable to engage in prolonged sitting and none of the other opinion evidence concluded Plaintiff needed to alternate between sitting and standing. *Id.* Additionally, little weight was afforded to Dr. Jimenez's opinion that Plaintiff would be off task for more than 15 percent but less than 20 percent during a weekday because there was "no suggestion that Dr. Jimenez ever performed any testing of [Plaintiff's] attention and concentration to support such a conclusion." (T. 26.) Further, Dr. Jimenez's treatment records consistently noted Plaintiff's memory upon neurological examination was "normal" after the alleged onset date. (T. 26, 455, 462, 470, 476, 482, 489, 495, 500, 545, 551, 557.)

Plaintiff argues, however, the ALJ made a "fundamental" factual error in that he assumes Dr. Jimenez's off task limitation somehow related to Plaintiff's emotional or mental conditions as opposed to his physical conditions and resulting fatigue. (Dkt. No. 13 at 10-11.) In the questionnaire, Dr. Jimenez indicated he treats Plaintiff for the following conditions: (1)

18

obstructive sleep apnea on CPAP; (2) Type II diabetes mellitus uncomplicated, (3) hypertension, and (4) coronary artery disease status post coronary artery bypass grafting 2011. (T. 504.) The questionnaire asked whether Plaintiff's conditions "and/or" any side effects of medication would cause Plaintiff pain or fatigue, affecting Plaintiff's concentration, work pace, or need to rest at work. *Id*. Dr. Jimenez answered "no" to "pain" and "yes" to all of the other questions. *Id*. The next question indicated that if any of the answers to the previous question were "yes," the provider should estimate the percentage of time that the individual would be "off task" as a result of any or all of the limitations in the previous question. *Id*. Dr. Jimenez checked the box indicating Plaintiff would be "off task" more than 15 percent but less than 20 percent of a workday. *Id*.

Another question asked the provider to state the medications currently taken by the claimant and to "state side effects, if any, of said medications. (Specifically indicate if any medications cause fatigue or require the patient to rest after taking same)." (T. 505.) Dr. Jimenez responded: Atorvastatin-can cause muscle cramps, joint pain; Carvedilol-fatigue; history of obstructive sleep apnea causes fatigue and daytime sleepiness. *Id*.

Thus, as summarized by Plaintiff, Dr. Jimenez treats Plaintiff for obstructive sleep apnea, Type II diabetes, high blood pressure, and coronary heart disease and "from those conditions Plaintiff becomes fatigued, that the conditions and side effects of the medication diminish concentration, that the conditions and side effects of medication diminish work pace and that the conditions require [Plaintiff] to rest at work and that is why Plaintiff would be off task between 15 and 20 [percent]." (Dkt. No. 13 at 11.)

The Second Circuit has recently made it clear that the ALJ need not afford controlling weight to the opinions of a plaintiff's treating physicians when they are not supported by clinical

findings and inconsistent with their own records and treatment notes. *Smith v. Berryhill*, 740 F. App'x 721, 724 (2d Cir. 2018). The ALJ must give "good reasons" for affording the limited weight. *Id*. (quoting *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); 20 C.F.R. § 404.1527(c)(2)). In *Smith*, the ALJ gave less weight to the opinions of three treating physicians who completed questionnaires, in which they checked boxes, indicating that the plaintiff would be "off task" various percentages of the day or absent from work for various days during the month. *Id*. The Court also stated that "the ALJ was not required to identify evidence explicitly rebutting the opinions of [the claimant's] treating physicians before discounting or rejecting them." *Id*. at 726 (citing *Halloran*, 362 F.3d at 32). In this case, the ALJ gave good reasons for giving "little weight" to some of Dr. Jimenez's findings, including an apparent lack of testing and inconsistency with his treatment notes. (T. 24, 26.) Further, Dr. Jimenez cited absolutely no justification for his opinion that Plaintiff would be off task between 15 percent and 20 percent of the workday. The Court notes Dr. Jimenez did not "specifically indicate" that any of Plaintiff's medications would "require the patient to rest after taking same." (T. 505.)

Plaintiff argues Dr. Jimenez's findings are "fully consistent with the medical evidence," including medical records showing reported occasional shortness of breath with moderate exertion (T. 329, 331, 355, 467, 469, 506, 513); dizzy spells (T. 331, 458); tiredness (T. 372); fatigue (T. 384, 386); constant and worsening joint pain (T. 305, 395, 398, 492); insomnia, decreased mobility, joint instability, joint tenderness, and blurred vision (T. 482); bilateral leg pain that is aggravated by walking and standing and associated symptoms with decreased mobility, joint instability, and joint tenderness (T. 479); back pain aggravated by daily activities (T. 479); chest pain (T. 466); constant and worsening joint pain of the bilateral hips, ankles, knees, and back (T. 458); decreased mobility, joint tenderness, and swelling (T. 458). (Dkt. No.

20

13 at 13.)

However, the two medical records highlighted by Plaintiff wherein he complained of associated symptoms of "tiredness" and "fatigue" are dated May 30, 2013, and August 14, 2013, well before the amended alleged onset date of November 30, 2013. (T. 372, 384, 386.) During the May 30, 2013, office visit it was noted "Plaintiff sates he is tired but has been working a lot lately." (T. 372.) It was further noted Plaintiff stated he "misses doses of his BP med and Pt. did not take it today." *Id.* On August 14, 2013, Plaintiff reported his symptom of fatigue was "aggravated by emotional distress and work issue." (T. 372, 384, 386.) By January 20, 2014, Plaintiff reported that in terms of his obstructive sleep apnea, he was "doing okay." (T. 402.) That encounter note was marked "negative" for "fatigue." (T. 402-03.) Dr. Jimenez's treatment notes from January 2014, through May 2016, indicate Plaintiff reported compliance with his medications and the "review of symptoms" was "negative" for fatigue. (T. 466, 467, 469, 473, 475, 482, 485, 488, 494, 498, 541, 544, 548, 550, 554, 556.) The single treatment note dated October 20, 2014, that was marked "positive" for "insomnia," was also marked "negative" for "fatigue." (T. 482.)

Further, as the Commissioner points out, none of the other assessments suggested Plaintiff's physical conditions would impact his concentration or work pace as opined by Dr. Jimenez. *See Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."); *see Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (The ALJ "is entitled to rely not only on what the record says, but also on what the record does not say.").

Dr. Chandrasekhar reviewed the record evidence, including Dr. Jimenez's opinion, and

did not assess any limitation for being off task. (T. 529-38.) In response to Interrogatory IX, "State any other work-related activities, which are affected by any impairments, and indicate how the activities are affected. What are the medical findings that support this assessment?" (T. 537.) Dr. Chandrasekar left the question blank. *Id*. Plaintiff also submitted additional questions to Dr. Chandrasekar. In particular, Question 14 asked, "In connection with your review in this case, did you also determine limitations by psychiatric conditions or was your evaluation primarily limited to physical impairments?" (T. 572.) Dr. Chandrasekar responded, "Mind and body go together; if psych ME is available, so be it." *Id*. Question 21 indicated, "Treating Dr. Jiminez [sic] has indicated an opinion that claimant would be off task between 15 and 20 [percent] of the day. It is accurate that either you would not have a specific opinion as to the amount of time off task or that you do not disagree with Dr. Jiminez [sic] opinion?" (T. 573.) Dr. Chandrasekhar did not check the "yes" or "no" box and responded, "I am here to consider objective findings and not opinions." *Id*.

Dr. Figueroa diagnosed Plaintiff with coronary artery disease, chronic low back pain, Type II diabetes, and right eye blindness. (T. 433.) Dr. Figueroa reviewed Plaintiff's medications, including Atorvastatin and Carvedilol. (T. 430.) She did not assess any limitations regarding concentration, work pace, or being off task. (T. 433.)

Based on the foregoing, the ALJ's consideration of the treatment relationship, the lack of consistency of his opinion with the other opinion in the record, and the medical evidence as whole indicate good reasons for declining to afford controlling or even great weight to Dr. Jimenez's opinion. *See Goodale v. Astrue*, 32 F. Supp. 3d 345, 358 (N.D.N.Y. 2012) (ALJ did not err by giving little weight to treating physician's opinion that used a "check box" form that Plaintiff's counsel had provided). For all these reasons, the ALJ's deicison to decline to adopt

the off task limitation of Dr. Jimenez is supported by substantial evidence, and remand is not required on this basis.

### 2. Dr. Chandrasekhar's Opinion—Sitting Limitation

Plaintiff argues the ALJ failed to properly assess his sitting limitation. (Dkt. No. 13 at 14-16.) The Court finds this argument unpersuasive for the following reasons.

The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996) (citing SSR 83-10, 1983 WL 31251, at *5).

First, the ALJ was responsible for reviewing all of the medical and other evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, 2015 WL 457643, at *7 ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."). Second, the ALJ's decision is not required to perfectly correspond with any of the opinions of medical sources cited in his decision, and he may accept portions of the medical records while rejecting others in order to make an RFC determination that is "consistent with the record as a whole." *Matta*, 508 F. App'x at 56. Third, substantial evidence supports the ALJ's assessment of Plaintiff's ability to sit for a total of six hours in an eight-hour workday with normal breaks. (T. 17.)

23

Here, Plaintiff argues he has satisfied his burden of demonstrating that he cannot meet the demands of sedentary work because Dr. Chandrasekhar's opinion limited Plaintiff to sitting up to five hours per day (T. 533), and to meet the demands of sedentary work, a claimant must be able to sit up to six hours. (Dkt. No. 13 at 14-15, citing SSR 83-10.) However, this argument amounts to nothing more than a request for this Court to reweigh the evidence, something that is prohibited by the limited scope of this Court's review. *See Warren v. Comm'r of Soc. Sec.*, 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation* adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

As Plaintiff acknowledges in his brief, the ALJ relied upon the findings and conclusions of Dr. Jimenez and Dr. Figueroa to determine Plaintiff could sit for six hours in an eight-hour day with normal breaks. (Dkt. No. 13 at 14-16; T. 24.) Specifically, the ALJ relied on Dr. Jimenez's opinion that Plaintiff could sit up to approximately 6 hours in an 8-hour day and Dr. Figueroa's opinion that Plaintiff had no limitation for sitting. (T. 24, 433, 505.)

Plaintiff takes particular issue with the ALJ's analysis of Dr. Figueroa's opinion because "Dr. Figueroa said nothing whatsoever about sitting." (Dkt. No. 13 at 16.) Plaintiff argues the

ALJ cannot interpret a physician's silence on a particular limitation as an opinion from the physician that the limitation does not exit. *Id.* (citing *Hawley v. Colvin*, No. 3:13-CV-397 (GLS/ESH), 2014 WL 3107967, at *3 (N.D.N.Y. July 8, 2014); *Miller v. Colvin*, No. 15-CV-6249P, 2016 WL 4478690, at *14 (W.D.N.Y. Aug. 25, 2016)).  In this case, however, Dr. Figueroa was not "silent" about Plaintiff's limitations.  (T. 429-33.)  She noted Plaintiff's subjective complaints regarding his ability to stand, walk, bend, and carry.  (T. 430.)  Dr. Figueroa found Plaintiff had a marked limitation for lifting, carrying, bending, walking, and standing due to chronic low back pain; a marked limitation for activities requiring mild to moderate exertion due to his cardiac condition; and a marked limitation for activities requiring fine visual activity.  (T. 433.)  On examination, Plaintiff appeared to be in no acute distress.  (T. 431.)  He had a normal gait, could walk on his heels and toes without difficulty, used no assistive devices, could squat to three-quarters; needed no helping changing for the examination, and was able to rise from a chair without difficulty.  *Id.*  Plaintiff's lumber spine showed flexion to 40 degrees, extension to 20 degrees, lateral flexion to 20 degrees bilaterally, and rotation to 20 degrees.  (T. 432.)  She specifically mentioned her assessment of Plaintiff's functional limitations, referenced the x-rays of Plaintiff's right hip and lumbosacral spine showing joint space narrowing and degenerative changes, respectively, and never mentioned any limitation on his ability to sit.  *See Dumas*, 712 F.2d at 1553 (holding the ALJ "is entitled to rely not only on what the record says, but also on what the record does not say.").

Based on the foregoing, the Court finds substantial evidence in the record to support the ALJ's sitting assessment and resulting RFC.  Remand is therefore not required on this ground.

### 3.      Dr. Nobel's Opinion—Maintaining Attention and Concentration

As set forth above, the ALJ found Plaintiff retains the ability to perform unskilled work that is limited to simple, routine, and repetitive tasks.  (T. 17.)  Relying primarily on circuit court decisions from other circuits, Plaintiff argues the ALJ's RFC does not properly account for Plaintiff's mental impairments.  (Dkt. No. 13 at 16-17.)  The Court agrees with the Commissioner that Plaintiff's mental RFC is supported by substantial evidence.  (Dkt. No. 16 at 7-8.)

In his mental RFC analysis, the ALJ assigned the most weight to the opinion of Dr. Nobel, the State Agency review psychologist, because she has program and professional experience, as well as her review of the available evidence of record, including the consultative psychiatric evaluation by Dr. Moore.  (T. 24-25.)  As set forth above, based on her review of the record, Dr. Nobel determined Plaintiff was not significantly limited in his ability to maintain attention and concentration for extended periods.  (T. 121.)  Dr. Nobel also found no limitations in Plaintiff's ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (T. 121-22.)  In all areas assessed, Dr. Nobel found only a moderate limitation in Plaintiff's ability to carry out detailed instructions.  (T. 121.)  No other impairments in concentration and persistence were noted.  (T. 121-22.)  Thus, the Court finds substantial evidence in the record supporting the ALJ's determination that Plaintiff can perform simple tasks.  *See Frey*, 485 F. App'x at 487;

*Little*, 2015 WL 1399586, at *9.

The ALJ also afforded some weight to Dr. Moore's opinion, including her assessment that Plaintiff showed no limitation with regard to following and understanding simple directions and instructions, no limitation with regard to performing simple tasks independently, a moderate limitation with regard to maintaining attention and concentration, a moderate limitation with regard to performing complex tasks independently, a mild limitation with regard to dealing with stress appropriately, and a mild limitation with regard to relating with others. (T. 25, 419-22.)

Specifically, the ALJ incorporated Dr. Moore's assessment regarding Plaintiff's moderate limitation in maintaining attention and concentration and performing complex tasks independently by restricting Plaintiff to unskilled work that is limited to simple, routine, and repetitive tasks. (T. 25.) "[C]ourts [in the Second Circuit] have routinely held that individuals suffering from 'moderate' difficulties with memory, concentration, and handling stress could reasonably be found to have the residual functional capacity to perform 'simple, routine and repetitive tasks.'" *Worthy v. Berryhill*, No. 3:15-CV-1762 (SRU), 2017 WL 1138128, at *7 (D. Conn. Mar. 27, 2017); *see, e.g.*, *Smith v. Colvin*, No. 3:14-CV-1752 (SRU), 2016 WL 1170910, at *6 (D. Conn. Mar. 23, 2016) ("when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting claimant to only unskilled work sufficiently accounts for such limitations") (citation omitted); *Steffens v. Colvin*, No. 6:14-CV-06727 (MAT), 2015 WL 9217058, at *4 (W.D.N.Y. Dec. 16, 2015) ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.") (citation and internal

27

quotation marks omitted).

Based on the foregoing, the Court finds the ALJ applied the proper legal standards in addressing Plaintiff's impairment in maintaining attention and concentration in the RFC and there is substantial evidence in the record supporting the RFC in that regard. Remand is therefore not required on this ground.

Thus, for the reasons outlined above, the ALJ's analysis of the medical opinions and the resulting RFC are supported by substantial evidence.

### D.     Substantial Evidence Supports the Step Five Finding

The burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). "However, the 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603). "A non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06).

After determining the RFC, the ALJ found Plaintiff is unable to perform any past relevant work. (T. 26.) The ALJ then found Plaintiff could perform other jobs existing in significant numbers in the national economy based on an RFC for the full range of sedentary work and

Medical-Vocational Rule 202.21.  (T. 26-28.)  Plaintiff argues the ALJ erred in failing to procure

VE testimony because there is a question regarding his abilities when combining her exertional

and non-exertional limitations.  (Dkt. No. 13 at 18.)  The Court disagrees.

First, as determined above, the ALJ's RFC finding was supported by substantial evidence

and based upon correct legal principles.  Thus, the Court finds Plaintiff's argument that the ALJ

failed to consider certain nonexertional limitation, including, *inter alia*, the limitation to being

off task between 15 and 20 percent of the day, to be without merit.  *See id.*  Further, the ALJ

determined Plaintiff retains the ability to meet all of the exertional demands for sedentary work.

(T. 27.)  Turning to the nonexertional limitations, the ALJ found that the impact of his postural

restrictions had very little effect on the sedentary occupational base.  *Id.*; *see* SSR 96-9p, 1996

WL 374185, at *7.  Indeed, SSR 96-9p specifically states that "postural limitations or restrictions

related to such activities as climbing ladders, ropes or scaffolds, balancing, kneeling, crouching,

or crawling would not usually erode the occupational base for a full range of unskilled sedentary

work because those activities are not usually required in sedentary work."  1996 WL 374185, at

*7 (SSA July 2, 1996).  Next, the ALJ found determined Plaintiff's mental limitations did not

limit his ability to perform unskilled work, including understanding, carrying out, and

remembering simple instruction; responding appropriately to supervision, and dealing with work

changes.  (T. 27); *see Zabala*, 595 F.3d at 411.  Under these circumstances, the testimony of a

vocational expert or other similar evidence regarding the existence of jobs Plaintiff could

perform in the economy was unnecessary.  *See Lawler v. Astrue*, 512 F. App'x 108, 112 (2d Cir.

2013).

Here, because the ALJ analyzed whether Plaintiff's nonexertional impairments

"significantly eroded" his occupational base, he did not commit legal error by relying on the

Grids to make his step five determination. *See Hurd v. Astrue*, No. 10-CV-1116 (DNH), 2013 WL 140389, at *4 (N.D.N.Y. Jan. 11, 2013); *see also Bistoff v. Colvin*, No. 1:14-CV-984 (MAT), 2017 WL 2772282, at *6 (W.D.N.Y. June 27, 2017) (collecting cases). Therefore, substantial evidence supports the ALJ's finding that Plaintiff's nonexertional impairments do not significantly reduce his occupational base.

Accordingly, the ALJ's reliance on the grids to provide the framework for determining that Plaintiff's nonexertional limitations were not disabling was correct and the ALJ's step five determining is supported by substantial evidence. (T. at 27-28.) Remand is therefore not required on this ground.

Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the SSA. 20 C.F.R. § 404.1520(g).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated: March 25, 2019
     Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge